

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT
DISTRICT OF NEW MEXICO

98 DEC 21 AM 9:59

*Robert m manuel*
CLERK-ALBUQUERQUE

SOUTHWEST COMMUNITY RESOURCES,
INC., a New Mexico Corporation, SOUTHWEST
ORGANIZING PROJECT, a project of
SOUTHWEST COMMUNITY RESOURCES,
INC., and JEANNE GAUNA, in her individual
capacity and as Co-Director of SOUTHWEST
ORGANIZING PROJECT,

     Plaintiffs,

v.

No.  **CIV  98  1544 PJK**

**DON J. SVET**

SIMON DEBARTOLO GROUP, INC.,
owner of COTTONWOOD MALL, and
d/b/a COTTONWOOD MALL; HEITMAN
PROPERTIES OF NEW MEXICO, LTD.,
owner of CORONADO CENTER, and
d/b/a CORONADO CENTER; PRUDENTIAL
INSURANCE COMPANY OF AMERICA, owner
of WINROCK CENTER, and d/b/a WINROCK
CENTER; CITY OF ALBUQUERQUE, a
Municipal Corporation,

     Defendants.

## COMPLAINT

### Nature of the Claims and Jurisdiction

1.    This is an action for declaratory and injunctive relief brought by the Southwest

Organizing Project ("SWOP") of Southwest Community Resources, Inc., ("SWCRI") a citizen

advocacy group, and Jeanne Gauna, Co-Director of SWOP, against the owners of the three

"regional" shopping malls located in greater Albuquerque, New Mexico.  Plaintiffs bring this

action pursuant to  42 U.S.C. §§ 1983, 1988 (1998), and 28 U.S.C. § 2201 (1998), under the First

and Fourteenth Amendments to the United States Constitution.  In this Complaint, Plaintiffs

apply to the Court for a declaratory judgment that Plaintiffs have the right to communicate peacefully with members of the public in the common areas, sidewalks, and parking lots of the three malls. Although the owners of the malls claim the right to forbid any speech-related activities (such as distribution of literature and organization of non-disruptive gatherings) on their property, the owners of the malls relinquished that right by leasing space in the malls to state and local governmental entities and by engaging in a pattern of cooperative endeavors in their malls with governmental entities and personnel. Accordingly, the malls can no longer claim the benefit of United States Supreme Court decisional law which permits owners of exclusively private malls to ban and/or arbitrarily regulate speech-related activities in their malls' common areas. Plaintiffs believe the issue presented in this case to be one of first impression in the federal courts.

2.      Plaintiffs have joined as a defendant the City of Albuquerque because it is the policy of the City's police department, Albuquerque Police Department ("APD"), to actively assist the owners of the malls in enforcing the mall owners' prohibition of, and/or illegal restrictions on, the exercise of Plaintiffs' right to speak freely and distribute literature in the common areas of the malls.

3.      Plaintiffs invoke the jurisdiction of the Court under 28 U.S.C. §§ 1331 (1998) and 28 U.S.C. § 1343 (1998).

**Parties**

4.      Plaintiff SWCRI, is a New Mexico not-for-profit corporation, with its principal place of business in Albuquerque, New Mexico. SWOP is a project of SWCRI. SWOP's primary purpose is to educate the public regarding the need for racial and gender equality and social and economic justice in New Mexico. SWOP's principal place of business is in Albuquerque, New

Mexico. Defendants have prevented Plaintiff SWCRI, through SWOP and individuals active in and affiliated with SWOP, from distributing leaflets to and communicating peacefully with passersby in the common areas, sidewalks, and parking lots of the malls. At all times material hereto, Plaintiff SWCRI, through SWOP and individuals active in and affiliated with SWOP, has desired, and continues to desire, to peacefully exercise its right to distribute literature to, and otherwise communicate with, members of the public who visit the malls, and employees of the retail and governmental entities located in the malls.

5.      Plaintiff Jeanne Gauna is Co-Director of SWOP. Plaintiff Gauna is a resident of Albuquerque, New Mexico. Defendants have prevented her from distributing leaflets to and communicating peacefully with passersby in the common areas, sidewalks, and parking lots of the malls. At all times material hereto, Plaintiff Gauna has desired, and continues to desire, to peacefully exercise her right to distribute literature to, and otherwise communicate with, members of the public who visit the malls and employees of the retail and governmental entities located in the malls.

6.      Defendant Simon DeBartolo Group, Inc. ("DeBartolo") is incorporated in the State of Maryland and is licensed to do business in New Mexico. Its principal place of business is Indianapolis, Indiana. At all times material to this Complaint, DeBartolo has been the owner of Cottonwood Mall and conducts business as Cottonwood Mall. Cottonwood Mall is a large, "regional" shopping mall located in Albuquerque, New Mexico. For reasons alleged with particularity hereinafter, DeBartolo's relevant conduct was and is under color of state law, statute, or authority within the meaning of 42 U.S.C. § 1983.

3

7.      Defendant Heitman Properties of New Mexico Ltd. ("Heitman") is incorporated in New Mexico. Its primary place of business in New Mexico is Albuquerque, New Mexico. At all times material to this Complaint, Heitman has been the owner of Coronado Center and conducts business as Coronado Center. Coronado Center is also a large, "regional" shopping mall located in Albuquerque, New Mexico. For reasons alleged with particularity hereinafter, Heitman's relevant conduct was and is under color of state law, statute, or authority within the meaning of 42 U.S.C. § 1983.

8.      On information and belief, Defendant Prudential Insurance Company of America ("Prudential") is licensed to do business in New Mexico, and at all times material to this Complaint has been the owner of Winrock Center and conducts business as Winrock Center. Winrock Center is also a large, "regional" shopping mall located in Albuquerque, New Mexico. For reasons alleged with particularity hereinafter, Prudential's relevant conduct was and is under color of state law, statute, or authority within the meaning of 42 U.S.C. § 1983.

9.      Defendant City of Albuquerque is a municipal corporation and political subdivision of the State of New Mexico. At all times material, the City's police department, APD, has maintained and operated police stations in Cottonwood Mall and Coronado Center. The activities of the department's officers are under color of state law, statute, or authority within the meaning of 42 U.S.C. § 1983.

### Allegations Common to All Counts

10.     Each of the three malls occupies many acres of land within the greater Albuquerque area. Each consists of one or more large buildings surrounded by expanses of parking areas. The principal building of each mall is surrounded by wide walkways and verandas

4

outside the various entrances to the buildings. The principal building in each mall contains numerous shops and restaurants which open onto wide, covered walkways providing common-area access to the stores and shops.

11. On information and belief, for many years the owners of Coronado Center and Winrock Center leased space only to private businesses. In recent years, however, Coronado Center and Winrock Center, along with the newer Cottonwood Mall on Albuquerque's west side, have leased substantial portions of their available space to state, local, and federal governmental entities and have established other important connections with governmental entities. In doing so, the malls have chosen to enmesh themselves with instrumentalities of government and with the public life of the community. Accordingly, the malls are no longer properly considered to be exclusively private property insofar as they house governmental entities and activities and control public access to those governmental activities and entities.

12. Governmental offices in the three malls include: an early voting polling place at Cottonwood Mall for the First Congressional District Special Election in June of 1998; an early voting polling place at Coronado Center for the November 1996 General Election; an early voting polling place at Winrock Center for the November 1998 General Election; a New Mexico State Motor Vehicle Division ("MVD") facility at Winrock Center, which is open to the public for the various transactions required between MVD and drivers and vehicle owners; a New Mexico State Motor Vehicle Division facility at Cottonwood Mall, which advertises itself as the largest MVD office in the state; a substation of the APD at Coronado Center; a substation of the APD at Cottonwood Mall; a United States Postal Service facility at Winrock Center; a City of Albuquerque Suntran bus stop at Coronado Center; a City of Albuquerque Suntran bus stop at

5

Winrock Center; and a City of Albuquerque Suntran bus stop at Cottonwood Mall.  In addition,

uniformed officers of the APD and security guards hired by the malls routinely cooperate in

patrolling, monitoring, and regulating the conduct of the public in the common areas of the malls,

including enforcing the malls' rules of conduct and attire.  On information and belief, each of the

malls has encouraged or permitted various other activities by governmental and other public

entities at various times.  In addition, the malls have routinely and systematically permitted

"speech" activities by members of the public to occur in the common areas of the malls when, in

their arbitrary discretion, mall management determined that such speech activities were not

controversial and were of such a type as to make the malls appear to be public-spirited "corporate

citizens" of the Albuquerque community.  Such activities have included voter registration drives,

fund-raising by various main-stream charities, educational presentations by non-profit

organizations and the like.

      13.    The state, local, and federal authorities whose activities take place in the malls,

and who have rented space in the malls, have delegated in whole or in part to mall management

and security the function of controlling access to the offices and activities of governmental

agencies in the mall, including voting locations, police stations, drivers' license and vehicle

registration locations, post offices, and bus stops, a task traditionally undertaken by the

government and the police.  Because a citizen can gain access to these governmental offices only

via the common areas of the malls, the walkways near mall entrances, and the parking lots

surrounding the malls, these areas are public ways.

      14. The malls profit from the governmental presence and public activities in the malls not

only because of the rent they receive from those entities, but also because the malls are able to

6

attract numerous customers who might otherwise not visit the malls, such as people with business to transact at the MVD, or voters visiting the polls to cast ballots. In addition, the malls implicitly represent to the visiting public that the malls are associated with government not only through the presence of governmental entities in the malls, but also through the use of local law enforcement to provide security in the malls.

15.     The presence of police substations in the malls, along with frequent patrolling of the common areas by uniformed APD officers, directly benefits the malls, by assuring mall visitors of their safety and protection while they are in the mall. The MVD benefits from the security afforded by its location inside the mall, as well as from the added convenience that this location provides to MVD patrons.

16.     In the course of discharging the security and access-control functions on behalf of the various state, local, and federal agencies who are or have been present in the malls, the malls have adopted a series of rules and restrictions which have had and continue to have the effect of unlawfully limiting the access of the general public to instrumentalities of government located within the malls' property, of suppressing the right of members of the public to associate with one another, and of obstructing and preventing the exercise of free speech on public ways. Included among these unlawful rules and restrictions are the following:

a. All three malls have adopted policies which forbid, except as exceptionally and arbitrarily permitted by mall management, the exercise by members of the public of any traditional, speech-related activities which would otherwise be appropriate to the common walkways, sidewalks, lobbies and curteleges of buildings that house governmental entities. Those forbidden activities include, but are not

7

limited to, peaceful assembly even in small numbers, distribution of literature ("leafleting") on matters of public importance, petition-gathering, peaceful picketing, and the like.

b.  All three malls permit limited exercise of speech-type activities by outside groups within the malls' common areas, but only when the malls determine, based on their arbitrary and unfettered discretion, far in advance of the proposed expressive activity, that the content of the proposed speech activity meets with their approval, is likely to be perceived as wholesome and non-controversial by the visiting public, and will inure to the commercial benefit of the malls.

c.  All three malls forbid citizens under the age of 21 from walking together without a parent or guardian in groups of more than three or four.

d.  Cottonwood Mall and, on information and belief, Winrock Center and Coronado Center enforce dress codes under which mall security evicts visitors to the malls based upon the malls' whimsical and arbitrary perceptions of what types of attire may offend the malls' preferred customers.

e.  Notwithstanding the presence in the malls of governmental agencies and activities, the malls reserve the right to refuse entry to anyone, in mall management's discretion.

f.  Notwithstanding the presence in the malls of governmental agencies and activities and public bus stops, the malls have engaged in a practice of "banning" from the malls—for periods up to and including "life"—citizens whom mall security and/or APD consider to have violated mall rules such as walking more

than three or four together or wearing what a security guard considers to be inappropriate attire.

17.    In spite of the right of SWOP members and those affiliated with SWOP to do business with governmental entities located in the malls without conforming to the malls' dress codes or other arbitrary mall policies, the malls assert the right to regulate the attire of persons doing business with governmental entities in the malls.  On information and belief, the malls have "banned" from the mall (a) persons wearing motorcycle-style leather jackets, bandannas, baggy pants, professional sports team apparel, religious icons depicting the Virgin of Guadalupe, or other attire which security guards, in their unfettered discretion, deem to be "gang-related," (b) persons walking in groups of three or more, (c) persons attempting to distribute literature within the mall, and (d) persons attempting peacefully to demonstrate on mall sidewalks and parking lots.

18.    By locating state and local government offices and activities in the malls, and acquiescing in the malls' control of space surrounding public agency offices, the state has delegated to the malls the authority to regulate speech surrounding these agency offices.  Through the malls' policies and practices, enforced by mall security in cooperation and conjunction with the APD, the malls effectively control the use of the space surrounding MVD offices, voting booths, police substations, post offices, and bus stops.  The malls purport to control all expressive activity in common areas in the same manner as might be appropriate for a private property owner in control of exclusively private property, on which no governmental entities were present.

19.    By controlling the use of the space surrounding early voting polling stations, MVD offices, police substations, post offices, and bus stops, the malls have assumed the public function of regulating and controlling on mall property ingress and egress for various state, local, and

9

federal agencies and the use of public transport. The malls have thus assumed the role of the state

by engaging in this control and are thereby bound by Constitutional constraints to the same extent

as the state. Accordingly, all relevant actions of the malls were and are performed under color of

state law, statute, or authority within the meaning of 42 U.S.C. § 1983.

20.     The location of state agency offices adjacent to private stores in the malls gives the

appearance to the mall visitor that the common areas are public, akin to a public street, a sidewalk,

or a public park. These common areas are open every day of the year for most of each day, are

often uncongested, and are by design and common usage a place where people may enjoy the

company of friends and neighbors in a relaxed atmosphere that is, through the use of high

ceilings, trees and skylights, designed to feel like open space out of doors. The common areas

were designed and constructed to create an open, uncongested area amid the shops, restaurants,

and governmental agencies. Within these common areas, members of the public are encouraged

to amble at their leisure, gaze at the stores' displays, relax on park benches, and participate in the

activities taking place in the common areas. Within easy access of these common areas the visitor

will find state, local, and governmental agencies, in addition to shops and restaurants. Members

of the public who visits these malls, in contrast to exclusively private shopping malls, may vote in

statewide and national elections, renew a driver's license, visit a police substation to file a report,

mail a letter, and board a public bus to anywhere in the city, all the while under the protection of

uniformed officers of the APD and mall security, working together. These malls' common areas

are climate-controlled surrogates for the traditional downtown business district, public street

corner, public park, village common, or town square.

21.     The malls stage public events to draw visitors to the mall.  The common areas of the malls are designed to accomodate such events without disrupting the ongoing commercial activities of the individual stores or the governmental activities conducted at state, local, and federal facilities in the malls.  The malls have opened these common areas for use by the public for expressive activity.  The common areas of the malls have been dedicated as sites for a variety of expressive activities—including distributing leaflets to and speaking with passersby—staged by groups such as the Boy Scouts, the Civil Air Patrol, Breast Cancer Awareness, and the Kiwanis Club.  Other activities allowed in these areas have included a voter registration drive by a non-profit organization and a Children's Health Rally.  By allowing these activities to take place in the common areas, the malls have promoted themselves as focal points for communication among citizens of the greater Albuquerque community.

22.     Plaintiffs have requested permission from each of the malls to distribute leaflets in the common areas of the malls and to speak to members of the public about discriminatory treatment of Hispanic youth by mall management and other matters of public importance.  The malls have either refused Plaintiffs' requests outright or required Plaintiffs to undergo an onerous, costly, and unreasonably restrictive application process, the terms of which allow mall management unfettered discretion to reject Plaintiffs' request based on the content of the proposed speech activity.  On at least one occasion at Coronado Mall, members of SWOP were threatened with arrest if they continued to attempt to pass out literature at the mall.  On or about October 8, 1998, Cottonwood management informed SWOP that its members would be arrested by APD officers for criminal trespass if SWOP attempted to distribute leaflets in the common areas of Cottonwood Mall.  Winrock Center has informed SWOP that it would not allow SWOP to

11

distribute leaflets or engage in related expressive activity unless SWOP completed an onerous, costly, and unreasonably restrictive application process, the terms of which allow Winrock Center management unfettered discretion to reject Plaintiffs' application based on the content of the proposed expressive activity and to revoke or rescind any permit at any time without notice. As a result of Defendants' rules and conduct, SWOP has been prevented from engaging in protected speech in common areas, sidewalks, and parking lots of the malls.

23.     The actions of Defendants have effectively prevented SWOP from communicating its messages to the members of the public who visit the malls. Defendants thereby violated, and continue to violate, Plaintiffs' right to freedom of speech and freedom of association as secured by the First and Fourteenth Amendments to the Constitution of the United States.

24.     By forbidding SWOP's leafletting and related expressive activities on the sidewalks near mall entrances and in the malls' common areas and parking lots, the malls have placed an unreasonable restriction on SWOP's constitutionally-protected right to free speech.

25.     The malls have permitted groups advocating messages that are agreeable to the Defendants to engage in speech activity in the common areas of the malls. For purposes of protection of the First Amendment, SWOP is similarly situated to other groups that have been allowed to express their views in the common areas of the malls, and the exclusion of SWOP from the malls is based only on who its members are and what its message is.

26.     State, local, and federal governments have tacitly endorsed the restrictive and content-based free speech policies of the malls by locating voting booths, police substations, MVD offices, post offices, and bus stops in the malls. These governments, in conjunction with the malls, have favored and facilititated and continue to favor and facilitate the expression of

some points of view—those that are sanitized or non-controversial—while disfavoring and blocking the expression of other points of view, such as those expressed by SWOP.

27.    SWOP has been informed by the malls that the content of the message of SWOP's handbills is disfavored by Defendants.  The malls have refused to permit SWOP to distribute SWOP's handbills in the malls because of the content of these handbills, which express SWOP's opinion that youth, and Hispanic youth in particular, have been treated unfairly by Defendants and their agents.  The malls' policies regarding expressive activity in the common areas are content-based regulations of speech, are not narrowly tailored to serve any legitimate governmental interest, and do not leave open adequate alternative channels for communication of the information to visitors to the malls.

28.    Nor do the malls' regulations serve a compelling state interest, nor are they narrowly tailored to advance a legitimate governmental interest, nor do they leave open adequate alternative channels for communication with members of the public who visit the malls.  Rather, they are based on the content of the proposed speech activity, thereby violating Plaintiffs' right to communicate peacefully with members of the public in the common areas, sidewalks, and parking lots of the malls.  Furthermore, even if measured by a lower constitutional standard, Defendants' regulations of speech in the common areas, sidewalks, and parking lots of the malls are not reasonable time, place, and manner restrictions because (a) Plaintiffs' leafletting and associated activities will not disrupt any of the public and private business conducted in the malls, (b) Defendants' regulations are tied to the content of the proposed speech activities, and (c) Defendants' refusal to allow Plaintiffs to distribute literature and speak with members of the public who visit the malls is absolute.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request the following relief:

A.   A judgment declaring that Plaintiffs have a constitutional right peacefully to distribute leaflets, picket, non-disruptively demonstrate, and speak to passersby in the common areas, sidewalks, and parking lots of the malls;

B.   An injunction preventing Defendants from interfering with Plaintiffs' peaceful and protected expressive activities in the common areas, sidewalks, and parking lots of the malls;

C.   An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

D.   Such other relief as the Court may deem appropriate.

**FREEDMAN BOYD DANIELS HOLLANDER GOLDBERG & CLINE P.A.**


By:_____
     John W. Boyd
     Scott M. Davidson
     Eric J. Knapp
P.O. Box 25326
Albuquerque, NM 87125
Telephone: (505) 842-9960
***Attorneys for Plaintiffs***

**AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO**
**PHILIP B. DAVIS**
Co-Legal Director
American Civil Liberties Union
of New Mexico
P.O. Box 80915
Albuquerque, New Mexico 87198

14

Telephone:  (505) 266-5915
*Attorneys for Plaintiffs*

CATES & HAMMEL P.C.
Kathryn A. Hammel
P.O. Box 1885
Los Lunas, NM 87031
Telephone:  (505) 865-3800
*Attorneys for Plaintiffs*